IN THE UNITED STATES DISTRICT COURT
FOR THE DISCTRIC OF SOUTH CAROLINA
GREENVILLE DIVISION

C/A NO.: 6:11-cv-01320-HFF

| | | |
|---|---|---|
| Christopher Droney<br><br>Plaintiff,<br><br>vs.<br><br>Blitz U.S.A., Inc., Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, Inc.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **FIRST AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |

NOW INTO COURT, by and through undersigned counsel, comes Plaintiff Christopher Droney who, in support of his claims against Defendant Blitz U.S.A., Inc., (collectively "Blitz Defendants") as well as Wal-Mart Stores, Inc., Wal-Mart Stores East LP, and Wal-Mart Stores East, Inc. (collectively "Wal-Mart Defendants") alleges as follows:

## INTRODUCTION

1. On or about December 12, 2010, a portable plastic gas can manufactured by the Blitz Defendants and sold by all Defendants exploded causing Plaintiff Christopher Droney to suffer severe burns which have caused him to incur substantial medical expenses, disfigurement and other recoverable damage. This action is brought against the Defendants pursuant to the laws of the State of South Carolina to recoup all compensatory and punitive damages to which the Plaintiff is entitled as a result of the personal injuries he has suffered.

## PARTIES

2. Plaintiff Christopher Droney is an adult resident of Laurens County, State of South Carolina.

3. Defendant Blitz U.S.A., Inc. (“Blitz”) is a non-resident corporation with its principal place of business in Miami, Oklahoma, but which is not qualified under the Constitution and laws of the State of South Carolina as doing business here, but which at all times material was doing business herein, and, in addition, committed a tort in this state against a resident of this state, from which such acts this suit arises and by such acts is deemed to be doing business in South Carolina and subject to the jurisdiction of the Courts in this State and for which process upon this Defendant may be had by serving its registered agent, Rocky Flick, Blitz U.S.A., Inc., 404 26th Ave. NW, Miami, Oklahoma 74354-2206.

4. Defendant Wal-Mart Stores, Inc. is a Delaware corporation engaged in business in South Carolina with its principal place of business in Bentonville, Arkansas. Defendant Wal-Mart Stores East, LP is a Delaware limited partnership engaged in business in South Carolina with its principal place of business in Bentonville, Arkansas. Defendant Wal-Mart Stores East, Inc. is an Arkansas corporation engaged in business in South Carolina with its principal place of business in Bentonville, Arkansas. All three defendants (hereinafter collectively "Wal-Mart") may be served process through their registered agent C T Corporation System, 2 Office Park Court, Columbia, South Carolina 29223, Suite 103.

5. Defendants have each purposefully availed themselves of the privilege of conducting business activities within the State of South Carolina by placing products, including the portable gasoline container at issue in this matter, into the stream of commerce and by advertising their products and/or establishing retail facilities within the state.

6. Defendants derive substantial revenue from goods sold and used in the State of South Carolina.

7. Defendants do reasonably expect, or should reasonably expect, that their business

activities could or would have consequences within the State of South Carolina.

8. Defendants have established continuous and systematic contacts with the State of South Carolina sufficient to confer general jurisdiction.

Venue is proper in this division because a substantial portion of the events occurred in this division.

## FACTUAL BACKGROUND

9. At a time prior to December 12, 2010, the Blitz Defendants designed and manufactured a portable plastic gas can for sale in the stream of commerce (referred to hereinafter as "Subject Gas Can").

10. At a time prior to December 12, 2010, the Subject Gas Can was sold by the Wal-Mart Defendants to Plaintiff's neighbor.

11. On or about December 12, 2010, Plaintiff Christopher Droney used the Subject Gas Can to pour gas to be used in the ignition of some wood in a chiminea in his neighbor's yard in Laurens County. Shortly thereafter, gasoline vapors outside the Subject Gas Can ignited and the flame flashed back into the vapor trail inside the container, causing the Subject Gas Can to explode. The explosion caused severe injury to Plaintiff Droney.

12. The Blitz Defendants designed, manufactured, assembled, marketed, distributed and sold the Subject Gas Can that caused Plaintiff's injuries and damage.

13. The Wal-Mart Defendants sold the sold The Subject Gas Can and in connection with that sale warranted that the Subject Gas Can was fit for ordinary purposes and not unreasonably dangerous.

14. The Subject Gas Can was not modified or altered after it left Defendants' control, and Plaintiff Christopher Droney was utilizing the Subject Gas Can in an ordinary and

reasonable manner in which the Subject Gas Can was intended and reasonably expected to be used.

15. Prior to the manufacture of the Subject Gas Can, Defendants were aware that Blitz gas can owners use the cans to pour gas as an ignition source for burn piles. Thus, Plaintiff Droney's use of the Subject Gas Can was reasonably foreseeable.

16. The Subject Gas Can was defective and unsafe for its intended purposes at the time it left the control of Defendants in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented the Plaintiffs injuries.

17. Prior to the manufacturer of the Subject Gas Can, Defendants were aware that other manufacturers including Eagle Manufacturing and Chilton had chosen to incorporate flame arrestors into plastic gas cans. Thus, the incorporation of flame arrestors into plastic gas cans was technologically feasible.

18. Defendants knew or should have known of the Subject Gas Can's susceptibility to flash back which occurs when gasoline vapors ignite and the flames chase the vapor trail back into the can, causing an explosion and/or spew of flames and burning gasoline.

19. Prior to the explosion of the Subject Gas Can, Plaintiff was unaware that the Subject Gas Can could have been sold with a flame arrestor and/or that it did not contain a flame arrestor, nor was Plaintiff aware that a fire could follow fumes and flash back into the can.

20. As a direct and proximate result of Defendants' acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the Subject Gas Can, which lacked a flame arrestor/flashback arrestor, Plaintiff suffered and continue to suffer severe personal injuries, including, but not limited to, severe burns, physical pain and impairment, physical disfigurement and other recoverable damage.

## CAUSES OF ACTION
## COUNT 1 DESIGN DEFECT

21. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

22. The Subject Gas Can designed, manufactured, assembled, marketed, distributed, and sold by Defendants was defective and/or unreasonably dangerous when sold.

23. The Subject Gas Can designed, manufactured, assembled, marketed, distributed, and sold by Defendants was the cause of Plaintiff Droney's injuries.

24. The Blitz Defendants are engaged in the business of designing, manufacturing, assembling, marketing, and distributing, portable gas cans, including the Subject Gas Can, to consumers within the stream of commerce.

25. All Defendants are engaged in the business of selling portable gas cans, including the Subject Gas Can to consumers within the stream of commerce.

26. Defendants expected the Subject Gas Can, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.

27. The Subject Gas Can was without substantial change in the condition from which it was originally sold by Defendants and unexpectedly failed under ordinary and foreseeable use.

28. At the time the portable gas can left Defendants' control, and at all times complained of, safer alternative designs were available that would have eliminated the risk of the Subject Gas Can exploding without substantially impairing the usefulness and intended purpose of the product.

29. The Subject Gas Can was unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case.

30. A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal screen or a wire mesh screen.

31. The efficacy of a flame arrestors has been known to the gasoline manufacturing industry for decades, and particularly the manufacturers of portable gas cans have been aware of their existence since before they were first placed in industrial gas cans in the 1920's and began being placed in consumer gas cans by at least 1978.

32. For more than a quarter century, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

33. Consequently, Defendants have known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline).

34. Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the Subject Gas Can far exceeded any utility and/or benefits associated with its design.

35. Nevertheless, despite the wealth of available scientific knowledge, Defendants have made, and continue to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety device into its portable gas cans, despite the fact that this safety device is economically and technologically feasible.

36. As a direct and proximate result of one or more of Defendants' acts or omissions as described herein and as a direct and proximate result of the Subject Gas Can's defective design, suffered severe burn injuries.

37. As such, Defendants are liable pursuant to the provisions of South Carolina Defective Products Act, S.C. Code Ann. §15-73-10 *et. seq.*

**COUNT 2 FAILURE TO WARN**

38. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

39. Defendants failed to provide adequate warnings that would be reasonably calculated to catch the attention of a reasonably prudent person given that its warnings were not conspicuous.

40. At the time the portable gas can left Defendants' control, consumers and/or foreseeable users, such as Plaintiff, were not and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using Blitz's portable gas cans.

41. Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Defendants knew, and was certainly in the best position to know, that its portable gas cans, as designed, posed a tremendous and horrific risk of injury to consumers, users, and bystanders.

42. As a direct proximate result of one or more of Defendants' failures to warn of the subject gas can's defective design, Plaintiff suffered severe burn injuries.

**COUNT 3 NEGLIGENCE**

43. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

44. Defendants owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care it its design, manufacture, assembly, marketing, distribution and sale of the Subject Gas Can.

45. Defendants ignored and/or breached that duty by its following negligent acts and/or omissions:

A. Failed to design and produce a reasonably safe portable gas can;

B. Designed, manufactured, assembled, marketed, distributed, and sold a portable gas can that was defective;

C. Placed into the stream of commerce a portable gas can that was defective in design;

D. Placed into the stream of commerce a portable gas can that was defective in that it failed to contain adequate warnings and instructions;

E. Placed into the stream of commerce a portable gas can that was unfit for its intended use;

F. Placed into the stream of commerce a portable gas can likely to cause injury in its ordinary use;

G. Placed into the stream of commerce a portable gas can that contained manufacturing defects;

H. Failed to incorporate a flame arrestor in the product design;

I. Failed to properly test its portable gas can and prototypes thereof with flame arresting material;

J. Failed to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, that a safety device existed prior to manufacture that rendered the Subject Gas Can unreasonably dangerous and defective under existing standards existing at the time of manufacture and sale;

K. Failed to provide adequate warnings that would be reasonably calculated to catch the attention of a consumer and/or user of that would convey a fair indication of the nature and extent of the dangers involved in using or misusing its product;

L. Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered portable gas cans;

M. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gas cans;

N. Failed to provide post-sale warnings after knowing, or having reason to know of the defects existing in the Subject Gas Can at the time it was sold that rendered it unreasonably dangerous for its intended use at the time it was sold and made the Subject Gas Can defective under existing standards existing at the time of manufacture and sale;

O. Failed to take subsequent remedial measures or to recall the product after learning, knowing, or having reason to know of the defects existing in the product at the time it was sold that rendered it unreasonably dangerous for its intended use and defective under existing standards existing at the time of manufacture and sale;

P. Ignored and/or failed to investigate scientific, technological and industry information and studies regarding the efficacy of flame arrestors;

Q. Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gas cans;

R. Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the portable gas cans to the Consumer Product Safety Commission;

S. Failed to warn that the gas can was not equipped with safety devices;

T. The subject gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility; and

U. Defendants knew or should have known that consumers would use their gas cans to start and/or maintain a fire, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent ignition and flashback.

46. As an actual and proximate result of Defendants' negligent acts and/or omissions, the Subject Gas Can, that caused Plaintiff's injuries, was placed into the stream of commerce in a defective and unreasonably dangerous condition.

47. Plaintiff's injuries and the manner in which they occurred were reasonably foreseeable to Defendants, which had actual and/or constructive knowledge from within the industry, nation publications, media reports and prior claims and lawsuits, that consumers, users,

and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

48. As a direct and proximate result of one or more of Defendants' negligent acts or omissions as described herein, Plaintiff suffered severe burn injuries.

**COUNT 4 BREACH OF WARRANTY**

49. Plaintiff re-alleges and incorporates into this count each and every preceding allegation as if fully pled herein.

50. Defendants, by and through the sale of its portable gas cans, expressly and impliedly warranted to the consumer and/or foreseeable users, such as Plaintiff, that the container was fit for its ordinary and foreseeable purposes.

51. Plaintiff made ordinary use of the container in reliance on said warranties.

52. Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

53. Defendants breached express and implied warranties by one or more of the following respects, among others:

A. Failure of the gas can itself and by improper marketing;

B. Failure to equip the gas can with a flame arrestor and/or other safety devices to make the gas can safe for its foreseeable environment;

C. Failed to provide adequate warnings about the inherent dangers involved in the use of gasoline and its gas can;

D. Failed to warn that the gas can was not equipped with a flame arrestor or other safety devices;

E. The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility;

F. Defendants knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it for its foreseeable environment;

G. Defendants knew or should have known that consumers would use gas cans to start and/or maintain fires, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback;

H. Failed to assure that the product design included a flame arrestor;

I. Failed to protect foreseeable users of the gas can from the dangers present in the use of such container, which dangers Defendants knew or should have known existed;

J. Failure to recall and/or repair the product;

K. Placed on the market a gas can which was unfit for its intended use; and

L. Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

54. As an actual proximate result of Defendants' breach of said warranties, the subject gas can was placed into the stream of commerce in a defective and unreasonably dangerous condition.

55. Plaintiff's injuries and the manner in which they occurred were reasonably foreseeable to Defendants, which had actual and/or constructive knowledge from within the industry, national publications, media reports, and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

56. As a direct and proximate result of said breaches of warranty, Plaintiff suffered severe burn injuries.

## CAUSATION AND DAMAGES

57. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pled herein.

58. Defendants caused Plaintiff significant and permanent injury and harm as a result of the negligence and other tortious conduct set forth herein. Plaintiff demands money damages consistent with South Carolina law for the harm inflicted by Defendants, including, but not limited to the following:

a. Past and future costs of medical care;

b. Past and future losses of wages, entitlements, support and other recoverable economic losses;

c. Past and future emotional distress;

d. Past and future pain and suffering and

e. Past and future hedonic damages.

59. Defendants have exhibited such willful disregard and/or absence of due care and/or recklessness and/or gross negligence such that punitive damage are appropriate in this action. Defendants' conduct includes refusing to incorporate a flame arrestor in the Subject Gas

Can despite *inter alia* knowledge of the feasibility and relative inexpensive nature of such a device; the propensity of Blitz gas can users to use gas cans in a manner such as that used by Plaintiff; the catastrophic injuries suffered by similarly situated users; and the fact that a flame arrestor would prevent injuries such as those suffered by Plaintiff.

**WHEREFORE,** Plaintiff Christopher Droney prays that he be awarded all compensatory and punitive damages due and owed, including attorney's fees and costs associated with the prosecution of this action, as allowed by South Carolina law, prejudgment interest and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted, this _____day of June, 2011.

By:________________________________

Terry E. Richardson, Jr. (#3457)
E-Mail: trichardson@rpwb.com
Daniel S. Haltiwanger (#7544)
E-Mail: dhaltiwanger@rpwb.com
Brady R. Thomas (#9623)
E-Mail: bthomas@rpwb.com
Matthew D. Hamrick (# 16853)
E-Mail: mhamrick@rpwb.com
RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, L.L.C.
P. O. Box 1368
1730 Jackson Street
Barnwell, SC 29812
Telephone No.: (803) 541-7850
Fax No.: (803) 541-9625

S. Kirkpatrick Morgan, Jr.
E-Mail: km@walkermorgan.com
William P. Walker, Jr.
E-Mail: bw@walkermorgan.com
WALKER & MORGAN, LLC
P.O. Box 949
Lexington, SC 29071

Telephone No.: (803)359-6194
Fax No.: (803)957-4584